[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Lydia Yaglenski brought this action against CPM Insurance Services (CPM), an insurance agency, and Lisa Gray, an employee of CPM. Yaglenski alleged that CPM and Gray failed to provide her with adequate insurance coverage for automobiles in her ownership and control, and as a result, she suffered damages.
In her revised complaint, Yaglenski sets forth the following facts. Under an insurance policy issued by Progressive Casualty Insurance Co. (Progressive), Yaglenski and her business, known as Bill's Auto Body, had a combined motor vehicle liability coverage of $300,000. Yaglenski inquired of her insurance agent, CPM, about the possibility of increasing the liability limits to as high as $1 million. These inquiries were made in 1992 and in April, 1994. Yaglenski alleges that an employee of CPM, Gray, advised her that the increased coverage was not available. In July, 1994, Yaglenski's grandson, Randy Natale, while driving an automobile with a license plate issued by Bill's Auto Body, was involved in a motor vehicle accident. As a result, Yaglenski was obligated to pay to the injured victims more than $170,000 after the Progressive policy had paid out its limit of $300,000. Yaglenski's revised complaint alleges the following causes of action against the defendants: breach of fiduciary duty, breach of contract, negligence, fraud, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA).
The defendants denied the material allegations of Yaglenski's revised complaint, and this matter was tried before the court on December 13, 2000.
At trial, Yaglenski testified on direct examination that Bill's Auto CT Page 2844 Body was an automobile body repair shop business started by her husband in 1959, which she took over upon her husband's death in 1986. Yaglenski ran the business, a sole proprietorship, until another grandson, Robert Natale, assumed control in 1994. The auto body shop had a "garage keepers" insurance policy covering all vehicles with dealer plates. Insurance for the business had been obtained through CPM at least as far back as the early 1980s. In 1994, the garage keepers policy was issued by Progressive with a policy limit of $300,000. Yaglenski testified she made inquiries to CPM, in 1990, 1992, and May of 1994, about increasing the liability coverage, and was told by an "Emily," in 1990, and Gray, the other two times, either that Connecticut "dictated" the $300,000 coverage or that $300,000 was the limit. She testified that she was ready, willing and able to purchase increased liability coverage if it was available. There is no documentary evidence to corroborate these inquiries or requests. There is evidence, however, that through CPM, the auto body shop had a $500,000 liability policy in effect in 1985.
Yaglenski further testified on direct examination that as a result of her grandson's car accident, the Progressive policy paid $300,000 to the accident victims, another insurance company paid $300,000, and she paid $178,000, $113,000 coming from Progressive as a result of an unrelated and earlier underinsured motorist claim made by Yaglenski.
On cross-examination, Yaglenski testified she was offered additional insurance coverage by CPM in April or May, 1994, before her grandson's automobile accident, and that she declined the coverage. Since this testimony was so much at odds with her prior testimony and allegations of her complaint, the court itself inquired as to whether Yaglenski understood she could get more coverage in May, 1994, to which she answered "yes." On redirect examination, Yaglenski corrected this testimony, stating that the offer of more coverage came in August, 1994, after the accident. Further on cross-examination, Yaglenski testified that after her grandson's accident, she had made inquires to CPM about increasing the automobile liability coverage. CPM told her increased coverage was available, but she declined to purchase it.
Gray, the CPM employee, testified she had not received any inquiries from Yaglenski prior to August, 1994, about increasing the liability coverage (at her deposition, Gray testified the first inquiries occurred in 1995). Gray identified several memoranda sent to Yaglenski in the years following 1994 which expressly advised her of the availability of increased coverage. She also testified that on each occasion Yaglenski declined to purchase the higher liability coverage. Gray testified that if she had received earlier inquiries from Yaglenski about additional coverage, she would have provided the same type of information that was given Yaglenski in August, 1994, and thereafter, i.e., such additional CT Page 2845 coverage was available for an additional premium.
The court has carefully reviewed the testimony of Yaglenski and Gray as well as the exhibits introduced at trial and the arguments and submissions of counsel. Based on the foregoing, the court concludes that the plaintiff, Yaglenski, has not carried her burden of proving her claims by a preponderance of the credible evidence. Yaglenski testified that she made two or more inquiries to Gray at CPM prior to July, 1994, about coverage limits. Gray testified these inquiries were not made. Even if one is to credit that Yaglenski made the inquiries, the burden of proof has not been carded either that CPM told Yaglenski no additional insurance coverage was available, or that Yaglenski would have purchased the available increased coverage. In addition to Gray's testimony, CPM offered documentary evidence that Yaglenski was told in August, 1994, that additional insurance was available and further documentary evidence that Yaglenski declined to pay the higher premium for the increased coverage on several occasions after 1994. There is also the stark inconsistency in Yaglenski's testimony, noted above, as to when she learned that higher liability coverage was available. In contrast, the testimony of Gray is corroborated by documents introduced by CPM.
Essentially, the only evidence offered by the plaintiff in support of her five causes of action was her rather brief direct examination. The court finds that this evidence does not establish the existence of any contract between Yaglenski and CPM. The only contract established by the evidence was the Progressive insurance policy, which was fully performed. Therefore, the breach of contract action must fail. Similarly, no evidence was offered to establish a fiduciary relationship between CPM and Yaglenski; indeed, Yaglenski appears not to have relied on CPM's expertise, so that when she was not satisfied with the premium quotes given her, she asked for additional quotes.
Regarding the negligence claim, plaintiff offered no evidence on the appropriate standard of care, if any, owed by CPM to Yaglenski. While procuring insurance, CPM has a duty as an agent to the prospective insured to perform that duty with reasonable care. Ursini v. Goldman, 118 Conn. 554
(1934). CPM performed this duty appropriately in obtaining the Progressive policy. Once the policy is procured, the agency relationship with the insured is ended; Lewis v. Michigan Millers Mutual InsuranceCo., 154 Conn. 660, 664 (1967); and there is no continuing duty owed to the insured. Colagoivanni v. Premium Financing Specialists, Inc.,
Superior Court, judicial district of New Haven at New Haven, Docket No. 370642 (July 22, 1996, Corradino, J.). Thus, a duty of care could only conceivably arise if one finds that Yaglenski specifically engaged CPM to obtain additional liability coverage. As noted above, Yaglenski has not carried the burden of proof on that issue, nor has she carried the burden CT Page 2846 that CPM breached a duty, if one existed.
The court also concludes there was insufficient evidence of intent or any other element of a fraud claim and that the conduct of CPM was not in violation of CUTPA. Finally, the plaintiff offered no evidence that Gray acted as anything other than an employee of CPM, and therefore, Gray cannot be held individually liable.
For the above reasons, the court enters judgment for the defendants and dismisses the complaint.
Adams, J.